The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Richard Sylvester, Appeal Number 19-2127. Attorney Drake, please introduce yourself on the record. Good morning, Jamesa Drake for the appellant Richard Sylvester. You may proceed. Thank you, Your Honor. May it please the court and counsel, Your Honor, may I please have two minutes for rebuttal? Yes, you may. Thank you. Your Honor, the Supreme Court teaches that it is not the function of courts to write impound or inventory policies or procedures because courts, quote, are hardly in a position to second guess police departments as to what practical administrative method will best deter false claims against its employees. The Supreme Court also teaches that the Fourth Amendment doesn't demand any particular policy choices as long as the exercise of an officer's discretion is channeled toward a community caretaking purpose. In Wells, for example, the court makes plain that, quote, policies of opening all containers or of opening no containers are unquestionably permissible. In our case, the Hancock County impound inventory policies reflect the choices made by those police officers and city leaders, and their choices are perfectly valid insofar as the Fourth Amendment is concerned. There is no argument otherwise by either party. According to Hancock County officials, the best way to prevent specious claims of theft when a vehicle needs to be removed from the roadside is to see if there is a way to avoid having the police take custody of the car at all. The policies direct the police officers to ask the defendant if there is a third party who could take custody of the vehicle before the officers are ready to leave the scene. Impoundment by the police is not a crime, but it is a violation of the Fourth Amendment. Can I ask you about that? We know that the question was not asked, right? Do we know why the officer did not ask? There's no direct evidence as to that on the record, but one inference I the method in which the impound inventory policies were violated is that by virtue of not asking whether there was someone other than the police who could take the vehicle, the police were able to keep the vehicle for themselves and indulge their interests. That's my question. You're not saying we have to draw that inference, and I guess my thought is if we are uncertain as to why that question was not asked, wouldn't the right thing to do be to vacate and remand for a finding on that point? I don't believe so, Your Honor. The burden was on the government to present evidence. They chose to proceed by submitting... Well, are you saying that a finding couldn't, district court could not have found that it was just inadvertence or forgetfulness or a variety of other things? In other words, what's in the record that suggests that you'd have to draw the inference that the reason he didn't ask was because he wanted to investigate? Well, Your Honor, my answer is two-part. The first is there is nothing in the existing record... Five minutes remaining. ...from which the court could infer inadvertence. There is plenty in the record from which the court could infer, based in large part on its own factual finding of an investigatory motive, that the reason the police breached the policy is so they could run a drug dog around the car. The initial plan was to do that at the side of the road. Initially, the plan was not to impound the car at all. It was you could draw on this record is the inference that the question was not asked, and therefore, the policy was breached because of an investigatory motive. What authority do you have that suggests that once that motive for breaching the policy is established, the impoundment itself must be understood to have been for a purely investigative motive? Well, there's no other inference that... Well, the thing is, the car is not... They don't ask your defendant about does he have another means of having the car taken away, but then the car is just there, and there's clearly a safety reason to have the car removed once the question's not breached. A policy that's about an antecedent aspect and not the impoundment itself compels the conclusion that the impoundment then must be treated as if it is for an investigative purpose. I don't have any direct authority. Well, tell me how to think about that. I mean, what am I supposed to do in that situation? So, just to put it a little bit differently, the district court made certain findings of fact, and my assumption is that here, our standard of review would be clear error. Did the district court clearly err? But just on that, so I maybe... It's clearly clear error on the factual finding, but the question about the intent in not asking the question, and therefore, breaching the policy, I understand that there's no finding on that score. Correct, your honor. Okay, so what we have is no finding as to why he didn't ask, and then a finding that the impoundment itself, following not asking and breaching the policy, was for a non-investigatory purpose, was for a caretaking function. We do have that finding. So, what are we supposed to do with that? Because those two things seem to me a little bit difficult to put together, because if the reason for not asking was investigatory, I'm not sure what pressure that puts on the finding the district court made that the decision to impound was for a caretaking function. I see your question, I think. The way I read this court's case law is that we are to measure this according to an overall standard of reasonableness, and as part of that, whether the officers were in compliance or not with the policy is relevant, and whether their subjective intent is also relevant. So, we have a finding by the district court that there was a breach of policy. I don't think there's any that there was an investigatory intent. Now, I understand this court's case law to suggest that neither of those things, either independently or together, are dispositive, but if we are then evaluating the totality of the circumstances in order to reach a reasonableness conclusion, the question is what other evidence is in the record that points towards reasonableness, that points in a different direction, because those other two findings point in favor of Sylvester. All we have, and this is what the district court, I believe, hangs its hat on, is the undisputed need to remove the car from the side of the road. Our position is that just triggers the need for the police to follow the policy, and the policy dictates that the officers do something other than what they did, and here, contrary to the government's suggestion, it's not just sort of a de minimis inconsequential policy violation. Mr. Sylvester tells the police that there is a potential third party available. They don't pursue that with him further, and instead of following the policy and impounding the car, towing it to a lot, and then inventorying it, that's time. If I may just finish the sentence. No, Ms. Drake, I'd ask you to answer this question. As I understand the policy, there was a technical violation in terms of not notifying him of the opportunity to contact a third person, but the policy goes on to say, but this person must be at the scene, that plainly did not apply, or be able to arrive prior to the law enforcement officer leaving. Okay, the only information they have is it's not his car, and he's on his way to pick up his girlfriend. Why would an objectively reasonable officer think, under those circumstances, that the safety considerations outweighed any technical violation of the policy? I believe the answer to that question lies in Deputy McFarland's cruiser cam video. That video demonstrates that the police were on the scene for at least half an hour. During the there was no public safety concern while the police were on the scene. As I say, they were aware that... I beg your pardon, it's busy route one. You've got police cars obstructing the line of traffic, and you think there was no safety concern even posed by that? Well, the officers themselves, for example, did not appear to see the need to direct traffic. I don't disagree that it was a busy road. I don't disagree that the car needed to be moved. To your point about why would it be reasonable for them to think someone might be able to arrive on the scene... No, that was hardly my question. My question was that they could have viewed this as, at most, a technical violation of the policy because the policy required there be somebody there or someone who would promptly arrive. Right. My response is to the extent that by characterizing this as a technical violation that suggests that it was an inconsequential or de minimis violation, I fall back on the argument that I made earlier, which is that it's actually crucial because it was plausible to think that in a half an hour someone else could have gotten to the scene, and by not offering him the opportunity to make a phone call to make those arrangements or suggesting to him in any way that that was a possibility, the police were able to keep the question. I asked you earlier about whether it would make sense to vacate and remand for a finding. Doesn't this colloquially suggest that there is a basis for inferring potentially that the reason why the question wasn't asked was because the nature of the statement from your client to the officer could reasonably have led them to think, well, no one's going to get here in time, but we just don't have a finding by the district court reading this record whether it was going to take too long and that's why he didn't pursue it or whether the reason he didn't pursue it is because he was eager to be able to get the dog sniffed. And without a finding on that point, we really can't resolve this because as Judge Thompson says, we review that for clear error. We don't make that finding. So certainly my preference would be to have this remand as opposed to outright affirm if it believes that that is sort of a missing key fact. But again, I think the record supports the notion in this court could comfortably infer that there was a breach, there was an investigatory motive, and there is nothing else from which the government can gain a reasonableness foothold. Okay, counsel, you have two minutes of rebuttal. Okay. Thank you. Attorney Drake, please mute your device at this time. Attorney Lopez, please introduce yourself on the record for us. Good morning. May it please the court, Julia Lopez for the United States. Proceed. Thank you, Your Honor. I'd like to pick up where my colleague left off in discussing the policy violation here. We disagree with the notion that this was a consequential policy violation, or that it was the police officer's failure to ask about third party to remove the car that allowed them to keep the car in custody. That is contrary to the district court's factual findings in this case. What the court found was that this was not a, I believe the word the court used was a serious policy violation because there was no evidence that there was anybody else available to remove this car promptly. So do you disagree with your sister's assertion that Mr. Sylvester said that there was somebody available to come get the car? I do, Your Honor. I don't believe that's what the record shows. I believe what my colleague is referring to is his statement that he was going to meet his girlfriend's mother at McDonald's. That's all it says. And the district court found that that provides no information about whether that was an appropriate person to move the car. We don't know whether she had her own car with her. We don't know if she was licensed. We don't know whether Mr. Sylvester or his girlfriend, the registered owner, would have given her permission. And we don't actually know how far away the McDonald's was. And so the court, that point was raised below, Your Honor. So what's the point of the policy? I mean, why have a policy if it can be so easily ignored with the police having no responsibility to even probe any of those questions that you just raised? Your Honor, certainly I think policies can help cabin police discretion. They can prevent arbitrary decision making. And certainly the compliance with a standardized policy is strong evidence that there was no pretext. But that does not mean the converse is true, that a policy violation proves pretext. Do we have a finding on pretext here? We have a finding that there was no subterfuge. That's not what I asked. Do we have a finding on pretext? Well, I guess I had interpreted Judge Hornby's finding that there was no subterfuge as a finding on pretext, Judge Barron. But that's no subterfuge, I thought, at the time of the impoundment. I think that's correct. Yes. But do we have a finding about what the reason for the breach of the policy was? Not specifically, but we do have... So why wouldn't it make sense to get that finding? Because suppose there was a finding below that he didn't ask the question because he really wanted to investigate. And he knew if he didn't probe, he'd then be able to impound, and then he'd have a safety justification. If a district court made that chain of findings and then said, therefore, it's fine, wouldn't that be problematic? I think potentially, but I think that... So if it would be potentially problematic, then doesn't it make sense to get the district court to make a finding on why it breached the policy? We just don't have a finding on that fact, if we're going to take seriously that it matters to have a policy. I think it matters to have a policy, Your Honor, but I don't think the policy should be dispositive in a case like this, where we have such a clear community caretaking... It's not the breach that's the dispositive. It's the reason for the breach that might be dispositive. And we don't have a finding as to the reason for the breach. We just have a finding that there was a breach, which I know in your brief you can test, depending on how you read the policy. But nonetheless, that's a fact question, what the finding there was a breach. We have no finding as to why. And I guess since pretext matters, it seems to me odd to decide the case without knowing why there was a breach. The district court can make that finding, we then defer to it, but we don't have such a finding. I have two responses, Your Honor. One, I think that here there was a finding that the consequence of the breach wasn't significant. In other words, had Mr. Sylvester said, my girlfriend lives around the corner and this is her car, or had he said, I'd like my girlfriend who's 10 minutes away to come move this car, and they had ignored it, then I think we might have a situation where the consequence... But he was never... The policy suggests the officer is supposed to prompt the car, the driver, as to whether he has somebody who can come and get the car. He was never prompted. That's correct, but there was... So it's a little odd to say, well, he never said that a driver wouldn't know that, and there to be prompted to say, actually, you can drive this away if you have somebody nearby. And it's been very simple to ask that, and it wasn't to ask. That's true, Your Honor, but I would still point to the fact that the district court made a factual finding that there was no evidence that there was anyone who could move this car. And that is an important factual finding that I do believe is entitled to... Five minutes remaining. And deference. And what that factual finding shows is that the breach here was not ultimately of consequence, because there is no evidence that the car could have been moved by anybody else. And so I think that's a different scenario, Judge Barron, than if you had a breach that really may have impacted what happened afterwards. And Judge Harvey found that this didn't impact the ultimate outcome. I'd also point out that... But this still feels circular, because even though the court made that finding that there was no one available, the police didn't ask the defendant if there was someone available. That's correct, Your Honor, Judge Thompson, but there was also no evidence presented that there was anyone available. And I would submit that that is evidence that the defendant could have provided to the district court. My colleague has said that the government chose to proceed by stipulation. This was a joint stipulation to the facts. I just go back to this question. Regardless of whether someone in fact was available, if there was an evidentiary hearing as to why there was no following of the policy and no asking or prompting of the driver if there was someone. And at that evidentiary hearing, it came out that the officer who was supposed to follow the policy said, well, I didn't want to find out whether somebody was nearby because I wanted to do the drugs test. I'm not saying that that's what the record showed, just saying if that came out, it wouldn't matter whether someone in fact was nearby for purpose of determining what the motive was. And if the motive was investigatory, rather than in order to solve a safety problem, then under our pretext aspects of the standard, isn't that a problem? I don't think it necessarily is, Your Honor. What's your best case for suggesting that when there's evidence that the breach of the policy was for an investigative purpose, the fact that the policy could have been complied with without having investigatory purpose means that there's no Fourth Amendment violation. I don't see a case that tells me one way or the other what to do with that situation. Well, I would point the court to Katia and Del Rosario, which both say that even if the police do have an investigatory motive, as long as there is an objectively reasonable basis for moving the car, they may act on it. But what I'm saying is that's not a case in which there was a breach of a policy. And what I'm positing is a case in which there is no safety reason for the breach of the policy, only an investigatory reason. And what you're saying is that's cured if, nonetheless, you could show that you could have complied with the policy and for safety reasons still have the same result. I don't know of a case that says that. I don't believe that this court has dealt with a breach of policy case per se. But what I would suggest is that, I guess my point, and maybe I'm not making it that clearly, is that if the breach, even if it was purely for an investigatory reason, doesn't ultimately impact the outcome, they still needed to move this car. And so there's still an objectively reasonable basis. And I guess I would pose it the other way, Judge Baron, that if they didn't ask because they wanted to keep the car, but there was, in fact, no one else to move the car, they still need to get it off the side of the road. That is the only objectively reasonable course. They can't leave it where it is. And so I think that is the import of Judge Horme's finding here, is that they plainly needed to move this car. And we have no reason to think there was any other way to do it. So regardless of what their reason was for failing to ask, and again the record is silent on that, I agree, ultimately this was an objectively reasonable course of action and an objectively reasonable outcome. No, I get it. I'm just saying, maybe you know, but like in a case of exigent circumstances, when it's objectively there would be exigent circumstances to go into a house, if the officers at the hearing testify that they didn't think that they were exigent, but they just didn't want to get a warrant, can they defend going in on the ground that objectively the circumstances were exigent? I think so, Your Honor. The exigent circumstances is an objective test. It's not a subjective test. And here, given our pretext analysis for community care taking functions, I had thought, we thought, since you could show pretext, that suggests that here, unlike many situations, there is a subjective element to this. There is, but what the court has said, and it said it most recently in Del Rosario, is that if you have mixed motives, then the objective reason trumps, essentially, that if there is an objectively reasonable basis on which to proceed, it doesn't matter that the police also had an investigatory motive. And so I think this idea of we concede they wanted to know what was in that car, that is plain, right? They invited the canine to sniff, and it was... One last question. On this record, since the car, the police were with the car for half an hour, how could we be clear that nobody could have come within that half an hour to drive the car away, given that the owner of the car was at McDonald's, which wasn't that far away? It wasn't the... Or the mother, the mother, was it? Yeah. Right, it was the mother of the owner. How would we know? Is your idea that that's on the defendant, would have to proffer something to show that somebody was nearby? Yes, I would suggest that is the case. There's no evidence, as we've argued, that the mother had any ability to remove the car at all. Ms. Lopez, I'm a little unclear about this half hour assertion, because as I understand it, the half hour is the entire time period that the car is pulled over to the side, and the period of time after he is pulled out of the car and asked questions is actually less than half an hour. Is that correct? I think that's correct, Your Honor. I don't have the exact time, but if you look at the videos of the traffic stop, there is a significant period of time where they're standing with Mr. Sylvester. I think they're waiting for confirmation and information on the warrant, inventorying the property that was on his person. So that is correct, Judge Lynch, yes. Thank you. Thank you. Attorney Lopez, you can mute your device at this time. And Attorney Drake, if you could reintroduce yourself on the record for your two-minute break. I just wanted to pick up on the point that I think Judge Barron was making in the circular nature of the state of the record in terms of the availability of the girlfriend's mother up the side of the road. The reason the officers don't know whether that woman would have been able to get there before they were prepared to leave is because they don't ask, and their failure to ask is itself a bias. Your opponent is making a slightly different argument, which is that may be true, but she's saying it doesn't matter because if in fact nobody was nearby, then there just is an objective safety reason for doing it. And you could have put forward at the evidence you're hearing below some evidence that somebody was nearby, but you didn't. Well, I would refer this to the appendix, page 70, which is in turn a transcript of the suppression hearing, page 13. It notes that at the five-minute, 12-second mark of Deputy Bagley's video, Mr. Sylvester asks the deputy, do you know who Haley Goodwin is, the girlfriend? The deputy says, yes, I do. They ask Mr. Sylvester where he's going, and he says, I'm going up the road to McDonald's to meet Haley's mother. So the police certainly had information that could have triggered them. I'm still asking something different. You don't have anything in the record that shows that in fact somebody was nearby, just a yes-no, right? Correct. So maybe what I think your opponent's saying, maybe you just want to answer this, it might be a different case if we knew that there was somebody nearby, then we might want to probe and find out, well, why didn't they follow up and follow the policy? But in a case in which there's nothing to show somebody was nearby, why isn't it essentially harmless or at least overwhelmingly objective in the absence of indication that somebody's nearby, that you have a safety problem and you've got to remove them? I think that what I just read to the court is an indication that there is someone nearby. I agree that I don't have anything on the record after the fact. If I thought that wasn't enough, do you have any argument then as to why we would need to vacate the remit? Yes. And unlike, your Honor was talking about the exigent circumstances exception to the warrant requirement, which sits on an entirely different branch of Fourth Amendment jurisprudence where the subjective intent of here, we know that it is, the factual scenario of this case bears no resemblance. If I may just finish. You can finish one sentence. No resemblance to this court's other community caretaking cases, which do not involve a dog sniff around the car. Thank you, your Honors. Thank you. Thank you, Counsel. Attorney Drake and Attorney Lopez may disconnect from the meeting at this time.